**OWYHEE DITCH COMPANY, a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. 6119.**

United States District Court
D. Oregon.

Jan. 11, 1954.

Gallagher & Gallagher, Ontario, Or., for plaintiff.

Howard Stinson, Regional Counsel, Bureau of Reclamation, Henry L. Hess, U. S. Atty., Victor Harr, Asst. U. S. Atty., Portland, Or., and William Burpee, Asst. Regional Counsel, Bureau of Reclamation, for the United States.

JAMES ALGER FEE, Chief Judge.

This is an action for breach of contract under the Tucker Act, 28 U.S.C.A. §§ 1346, 2401, 2402.

On August 3, 1928, the United States entered into a written agreement whereby, in consideration of the payment to it of $300,000.00, it promised to furnish to the Owyhee Ditch Company quantities of stored water. The amount of water to be delivered to the company was 21,000 acre-feet in each year in which the reservoir filled to full capacity thereof.

It is admitted in the pre-trial order that, in each of the years in question, the government agents discharged from the reservoir at the beginning of the season tremendous quantities of water. As a result, the reservoir failed to fill. The government agents thereupon refused to deliver to the company the 21,000 acre-feet agreed upon. This was done on the theory that the reservoir failed to fill, which was due to the government withdrawals. These agents thereupon billed the company $.50 an acre-foot for water delivered to meet its needs from a pumping plant. These amounts were paid by the company. Upon discovery of this situation, the company brought this action.

The language of the contract is plain and unambiguous. The govern-

ment agents did not permit the reservoir to fill because they directed withdrawals. The contract was thus breached. It seems too obvious for argument that, since the act of the agents prevented filling, they could not refuse to deliver to the company the water which it would have received if all the water flowing into the reservoir had been retained.

The pertinent clauses are as follows:

" * * * the Company will pay * * * for the use and benefit of storage capacity * * * and the United States will furnish the Company the use and benefit of Twenty-one thousand acre-feet of storage capacity in said Reservoir (above elevation 2590), and the United States * * * will deliver to the Company * * * each and every year that said reservoir fills to the full capacity thereof, the same proportionate part of the stored water actually available in said reservoir above elevation 2590 which the said Twenty-one thousand acre-feet is of the total available capacity of said reservoir above elevation 2590 * *. *Provided*, however, that if on account of drouth or other cause, the reservoir should fail to fill to full capacity during any year, then * * the amount of stored water to which the Company will be entitled will be the amount of stored water carried over by the Company in said reservoir from the preceding year plus the Company's proportionate share of the amount by which the maximum amount of water stored * * during such low water year exceeds the amount stored therein at the close of the preceding irrigation season * * *, but in no event shall the Company be entitled to more than 21,000 acre-feet of stored water * * *. It is understood that the Company will have the right to carry over from one irrigation season to another * * * any part of the stored water to which it is entitled but which it does not use and orders held over * * *."

Although no more need be said, since the language of the contract can bear no other interpretation, the attorneys for the government urge some considerations which might apply if the language of the agreement were ambiguous. Inasmuch as the Court believes there is an honest mistake of interpretation, respectfully urged, the Court will deal with the contentions.

1. It is urged that the bureau applies a similar construction to other storage reservoir contracts, and therefore it will be embarrassed by the present interpretation. But the Court is only construing the agreement before it.

2. It is said the opinions of the courts permit the passage of so-called "natural flow" through a reservoir without construing it as "stored water." These decisions do not apply to this contract. Therein "natural flow" belonging to the company is specifically mentioned only in the provision that the United States may use this water with other water delivered to the company "for the generation of electric energy." The contract treats all other water coming into the reservoir as "stored water." No distinction is made between "natural flow" going to the project and "stored water", and any such "natural flow" is not mentioned. If there had been any intention of the draftsman of doing what has since been done by those operating the reservoir, the process could have been provided for in express language, but the company would probably not have paid $300,000.00 for what the government agents now think it got.

3. But it is contended that the agreement was entered into in view of the rights of the project to appropriated water. The language of the contract indicates no such idea, notwithstanding the many "Whereas" clauses and the direct recognition of the appropriated water rights of lands under the Company ditches. The United States is required to appropriate water under the laws of the State of Oregon in order to obtain a valid title to the rights. The Court has carefully considered the documents sup-

posed to verify a claim of appropriation of natural flow as distinguished from stored water, and finds that any water lawyer in Oregon would have grave ·doubts of the existence thereof in the absence of authoritative ruling on the matter.

But the matter has not been adjudicated by any court, and there is no administrative determination if this were binding. In any event, the status of the water rights on this stream was such that the assumed ownership by the government would not be used to interpret an ambiguous contract. Ambiguity does not disperse ambiguity.

■ The government urges that, if it cannot construe this contract as it contends, the violation of other contracts will be required. The government, as a private individual, may bind itself to conflicting obligations in separate contracts with several individuals. The answer is that probably the agents made the same mistake of interpreting this contract then as now. Lay construction of a contract is often in error.

The government contends that, since the company paid for the water which was delivered in excess of that to which the government agents erroneously figured it was entitled, the company cannot recover. The Court finds the company did not know how the storage was figured until after these amounts were paid and just before suit. The government had means of compelling payment by shutting off the water. The company brought action for breach of the original contract, which the Court has construed. The amounts paid to the government have some relation to the measure of damages for breach.

■ Even if the company voluntarily made the payments with knowledge, it would not help the government. The company sues for breach of contract. A breach of contract cannot be waived. The money which the company paid out only assists in fixing the measure of damages.

The Court finds the material issues of fact in favor of the company.

The Court finds that the contract bears the meaning contended for by the company.

Findings of fact, conclusions of law and judgment may be submitted. If there is any dispute about the amount of damage, the Court will determine this when the findings are settled.